For 19-3047 Minnesota, Elizabeth Shank v. Carleton College Okay, Ms. Behrens, we'll hear from you. Good morning, thank you, your honors. I represent Elizabeth Shank and I'm before the court asking you to reverse the summary judgment granted in favor of Carleton College on the claims that were remaining after Carleton College's motion to dismiss. I'd like to start with the Title IX claim and I would ask the court to look carefully, as you will, at the factual record here because there's substantial material fact disputes about a number of actions that Ms. Shank has alleged showed that Carleton was unreasonably, acting clearly unreasonably on known facts. And I will begin chronologically, starting with the procedure that was held against student one. It is undisputed that student one raped Ms. Shank in a Carleton dormitory. It is also undisputed that right after the rape, Ms. Shank went and sought medical attention and a token to get to the hospital. It's undisputed the token was not given to her, although I believe that there was a dispute about whether she asked or not, but again, on a summary judgment, that should be resolved in Ms. Shank's favor. It is undisputed that alternative housing, a right that Ms. Shank had under Carleton procedures was not offered to her at that point. She spent a number of months living across the hall from the student who had raped her. Ultimately, it came out that she had been raped by student one. It further came out that student one had been offered a residential assistant position at point Carleton largely took over the procedures. Ms. Parents, I'd like to ask a question on something that you just mentioned, and that is when or whether Ms. Shank was moved from her dorm room. If I understand correctly, is it undisputed that Carleton didn't know the identity of student one in the fall? Is that correct? It is undisputed. It did not know the identity, but starting in February. Right, and I understand that. So my question is, is it undisputed or is it in dispute whether Carleton knew where the unidentified student one lived? In other words, is it undisputed that Carleton knew he was on the same floor, dormitory floor, or is that still unknown? It was undisputed as of February. But not as of September. That's correct. Although, yes, okay. And back to the chronology. Once it became known that student one had been offered an RA position, many of the rights that Carleton had told Ms. Shank she was entitled to under their policies, including rights that were not dependent on whether or not she brought a complaint, were taken away from her, and it's undisputed that she was not advised, Shank was not advised that if she failed to come forward and assert a complaint on her own behalf, that a lot of those rights she would be deprived of. I think there are material fact disputes about whether Shank wanted to attend the hearing or not, but I think it is undisputed that the investigator never spoke with Ms. Shank, even though Ms. Shank had submitted a written statement that Carleton was aware was incomplete. I have a question about, you mentioned that one of the assertions is that Carleton failed to inform Ms. Shank of what you're calling rights she would give up if she did not proceed as a complainant. Had Carleton not proceeded with a complaint, what rights would Ms. Shank be giving up? In other words, I understand that there's a concern that once Carleton went through with the complaint, she was no longer a party, so to speak, to it, so could not appeal the result or be sort of a participant as she otherwise would be if she were the complainant. But if that hadn't gone through, were there other things that she would have been giving up that you're asserting Carleton should have told her about, had Carleton not gone forward? Absolutely. I guess maybe I'm misunderstanding the question, but if Carleton had not come forward at that point and taken over the procedure, all of the rights that were under the policies would still have been in Ms. Shank's court. And we argue one reason why Carleton acted clearly unreasonably was because a lot of those rights should still have been in her court. For example, the right to appeal. The Clery Act says that colleges have to have a procedure where the victim is allowed to appeal, not the party, not the complainant, the victim. It's clear that Ms. Shank and her mother asked Carleton to appeal the sanctions. That right was denied. Whether or not Carleton went forward with a complaint, that is a right that Ms. Shank should have had. And it is undisputed. Those are undisputed facts, for example. So to get that right of appeal, just so I want to make sure I understand the crux of the complaint, that she should have had the opportunity to bring her own complaint, which would have had a part of that, the right to appeal any decision. Is that what you're saying? In part. I'm also saying that even though Carleton went forward with a procedure, Shank should still have had a right to appeal, whether or not she was the party or the complainant. And in fact, the dean at the time, Dean Wagner, said even though Shank was not the complainant, which is an argument that Carleton has made, she still should have been allowed to participate in the process. So I think it's two pronged, Your Honor. I think it's because the facts are that Carleton did go forward. She was deprived of rights of which she was not informed. And Joanne Mullen testified, no, we never told Ms. Shank that if this proceeded forward, she would lose these rights. But our position also is even with the factual record as it is, Shank was still deprived of rights she was entitled to. I think there are also material fact disputes about the one-on-one meeting that occurred in October of Ms. Shank's sophomore year. I believe there are material fact disputes about whether or not Ms. Shank, with the second student who raped her, whether she wanted a procedure to go forward, whether she was told she couldn't bring a formal complaint against student two because student two was graduating in several months. There are undisputed facts that Carleton was on notice that student two was a predator and they did nothing to, other than, I should not say they did nothing, that's not correct. They did issue a no contact order as regards the four students who filed community concern forms against him. But there was no other action taken to prevent him from preying on other, in his case, female students. There are fact disputes about, as regards student one, whether the sanctions were commensurate with other students who have been found in violation of the sexual misconduct policy. And I'm aware there's case law that says inadequate sanctions are not enough to state a Title IX claim. But we have so much more than that in this case. More than just inadequate sanctions. Even the sanctions against student one that were levied, it's undisputed that they were not enforced. He was required, for example, to get six counseling sessions. Undisputed, he only got one. Nothing was done. So even the sanctions that were imposed against student one were not enforced by Carleton. There's a fact dispute. Question for you. Is it undisputed, first, that the appellant here did not and would not reveal the name of the alleged perpetrator for an extended period of time? And if that's the case, is that significant? Or do I understand your argument to be that that time period in which she did not want to reveal the name of this person preceded the deficient actions of the college? And what you're complaining about comes after the identity finally came out through other sources? Your Honor, the identity came out in May of 2012 and everything I've been talking about other than, for example, the failure to offer alternative housing right away, that occurred earlier. But everything I was discussing about student one occurred after his identity was known. And frankly, I think that's the reason why so much of this happened. It's undisputed that Carleton did not at that point in time have a procedure to address this particular situation. One of the Carleton witnesses admitted that Carleton was making the procedure up. She agreed. She didn't admit. She agreed that Carleton was making up this procedure as it went along. And I think that goes to the heart of why so many clearly unreasonable steps had been taken. So it's after his identity was discovered. And more than that, it was discovered that Carleton had offered him a resident assistant position. Okay. I take that as an answer to Judge Shepard's question. You are in your rebuttal time. You can use it now or save it. I would prefer to save it, Your Honor. Then do it right now. Thank you. Thank you. Mr. Summermeyer. Good morning. May it please the court, Sean Summermeyer, representing defendant at the Lee Carleton College. Your Honor, I submit to the court that the material facts of this case, the true material facts that matter to the outcome of the legal claims are not, in fact, in dispute. While a student at Carleton, Elizabeth Shank, reported two separate incidents of sexual misconduct by fellow students. With respect to the first, Ms. Shank repeatedly expressed reluctance about pursuing a complaint against her alleged assailant. But she was nonetheless concerned when she learned that he might serve as a resident assistant. Counsel, let me interrupt you off the bat to say, as you know, they've got two experts who'd say that's normal. How do you respond to that as a college and as the attorney here today? How do I respond to the expert testimony? I think that's what their experts are really saying is that's normal. Sure, there's no dispute that that may be normal. But there's also no dispute that under the law, Carleton can only act and respond to information that it knew at the time. If Ms. Shank was reluctant or didn't want to disclose the identity of her assailant or didn't want to proceed, that is her right. But Carleton nonetheless has an obligation under the law to take appropriate action when it learns of sexual misconduct. And if Carleton knew that the unidentified student, one, lived on Ms. Shank's dormitory floor by February, why didn't that trigger the obligation under its own policies to find her alternative housing? Now, I want to focus on the, Kelly, in answering your question, I want to focus on the undisputed facts with respect to that incident. Ms. Shank had been living in the dorm with student one since September. She had not brought the assault to the attention of any authority at Carleton. She was hospitalized in February. She returned to her dorm room with the consent and support of her parents and health professionals. She did not want to disclose the identity of student one at that time. Now, it is not clearly unreasonable for Carleton, knowing all of that information, to allow Ms. Shank to return to her dorm. I think that... Now, maybe I misunderstood. I thought in February when the poster came out, that then while he wasn't identified by name, and perhaps I've misunderstood, but I thought Carleton at that point knew either through the community forum notations or some other information that student one at a minimum lived in her dorm or on her floor. Is that not right? That's correct. It did know that in February. And so why wouldn't that trigger their obligation to at least offer the move at that point? I don't believe there is an obligation under Title IX case law to offer a move. Now, it's undisputed that within a couple of weeks, I think four or five weeks of returning to her dorm, Ms. Shank asked to be moved. And when she did, she was moved immediately. And Carleton staff made sure that that move was facilitated without her having to explain her situation or the reasons for it. And I think the closest case here is the Maher versus Iowa State case, where the plaintiff in that case said it was deliberately indifferent for you, the school, not to move me when I requested it. And this court found, no, it was not deliberately indifferent not to move the plaintiff during the pendency of the disciplinary proceeding. So just returning to a couple of the high-level points that show that Carleton's response was far beyond the clearly unreasonable standard that applies here. Now, as I mentioned, because Ms. Shank was reluctant to bring a complaint, Carleton decided that it would bring one in order to bring about the outcome that she had expressed desire for, which is student one losing his RA position. As part of that process, Ms. Shank was given the opportunity to submit a written statement and to opine on what she believed would be an appropriate sanction. Now, Ms. Behrens raises the issue of, makes the argument that there was some dispute of fact as to the degree to which Ms. Shank wanted to participate in the hearing. What is not in dispute is that Ms. Shank testified in her deposition that she asked Ms. Carleton, her advisor in this process, may I participate in the hearing? And the district court accepted that testimony as it must, as true. Now, what is not in dispute is that after she knew she would not be participating in the hearing, Ms. Shank was given the opportunity to supplement her written statement and ask specifically to opine on what sanctions she viewed as appropriate for student one. So in that disciplinary process, that process that I'm describing resulted in, among other things, the loss of the RA position for student one and the imposition of a no contact order. Do I understand the record correctly that Carleton had never proceeded as the school in a disciplinary action in a case like this that had always been on behalf of a complainant? Yes, Judge Kelly, the testimony is that this was the first instance in which Carleton, the institution, acted as a complainant in a sexual misconduct case. And is it undisputed that Ms. Shank was not told that Carleton was going to move forward? The testimony on that point, Your Honor, is that Ms. Shank, there is testimony from some of the deans who were involved in the process that Carleton was considering moving forward as the complainant and that they did not disclose that to Ms. Shank because they wanted to give her time and space to make a decision. She was still in the process of deciding whether she wanted to bring a complaint in her own name. Now, Counsel, on the poster, as I understand, you're drawing a very fine line. She complains about the posters and the posters are pretty provocative, candidly, when I looked at it. She complained about the posters and I think the district court and you are relying upon the fact, well, they didn't take them down when she complains about them and it was upsetting to her. And don't you take an awful legalistic approach to this on the poster? I respectfully don't think I take a legalistic approach, Judge Benton. I think the key issue with the poster is that when Ms. Shank complained about the poster, Carleton did not know the identity of student one. So it is not... Yeah, but they knew it was somebody on the posters. They knew it was somebody on the posters. They had, there is testimony from Julie Thornton, one of the Carleton deans, that given the information Ms. Shank chose to disclose at the time, they were, they took steps to, but were unable to identify who that was based on the handful of facts that they knew. That the dorm location, the fact that he was on it. The other posters are not in, there's only one poster, right? One go-hard poster in the record, right? Or are several of these athletic posters in the record? I don't know that those made it to the appeal record, Your Honor. I mean, I believe there's testimony in the appeal record. No, no, counsel, the record on appeal is the record in the district court. Sure. In the record in the district court, is there other exhibits besides just the one that's 117 Thornton, whatever it is here? Yes, there are other posters like that of other individuals. Okay. No, but are they in the record in the district court is my point? Yes, Judge, they are. Thank you. Go ahead. You know, I think another key issue on the poster, and this kind of dovetails with the Ms. Shank wanting to fault Carleton for her remaining in her dorm, is that Carleton knew that Ms. Shank had, as I said earlier, returned to the dorm with the assent of her parents and her medical professionals and had a plan for ongoing treatment with a therapist at the college. I'm sorry, I had another question on the poster. I used to argue cases. I hate this, but I'm going to do it to you. Does the record show how long the posters were up? Not, I don't believe so. Okay, because as you know, those of us been to college, you know, some are up for a long time, some are up for a short time, but I'll now go back to where you were. Sorry for the interruption. Go ahead. Sure. Wrapping up the issue of the poster, Judge, I think the key point is that Ms. Shank has not presented any case law that would hold that the presence of a poster or even something like that would amount to deliberate indifference to known acts of sexual harassment or sexual assault. Wouldn't it be like the reaction of Carleton once they knew her reaction to it? It seems maybe not the, you know, putting aside your view of the poster, but just putting them up, not knowing that Ms. Shank would have a reaction is different than not taking them down once you do know that she had a reaction to them. I agree with that distinction. I do want to make one point, though. There is not testimony in the record that as to who exactly hung the poster. There's speculation that it was a student poster as opposed to something sanctioned by the Carleton team. But were they taken down? Were they taken down by Carleton? No, there's not. There's no testimony that they were. I think that the key legal point and the closest analogy I was able to find in this court's case law on this point is the Culver Stockton case where the plaintiff was saying that the college's failure to investigate her report and the failure to offer medical services amounted to deliberate indifference. And what this court found is that those allegations were linked to the college's inaction to emotional trauma. And what Title IX requires is that those allegations amount to deliberate indifference that caused or made the plaintiff more vulnerable to assault. And that is certainly nowhere in the record with respect to the presence of this. Well, that sentence in Culver Stockton is liable or vulnerable to harassment, right? If you actually read the sentence, right? Correct. You said assault. And I think the way I'm sorry, I did not mean to say I want to touch on the one-on-one meeting because I don't there is no dispute as to the key facts of the one-on-one meeting. Now, Ms. Schenck, and I want to be clear on this, and I want to read the testimony from the record. Ms. Schenck testified that it was she who insisted that the meeting occur alone. One-on-one with Student One, even though Carlton had asked whether someone else can be present. On page 865 of the appendix is Ms. Schenck's deposition testimony. Question, Ms. Schenck, did you refuse to meet with Student One if anybody else was present? Answer, yes. Question, and you communicated that to Ms. Carlson. Answer, yes. There is no other reading of that deposition testimony that it was Ms. Schenck's decision and Ms. Schenck's decision alone to meet one-on-one with Student One. What about the decision to, or the idea of meeting all together? Just the idea of this meeting. Is that, is it undisputed that it was her idea or is that still a matter of disagreement? There's no dispute about the idea, Judge Kelley. Ms. Carlson, I apologize, it's confusing having a Carlson in this case, but Ms. Carlson, who was her advisor in this process, testified that in response to a query from Ms. Schenck about exploring the possibilities for closure regarding this incident, Ms. Carlson said, I proposed the possibility of a mediated conversation. Now, mediated means, mediated is not one-on-one, which is what Ms. Schenck ultimately insisted upon, but that's the only real dispute with respect to the meeting. You know, there are other undisputed facts related to that meeting, including that Ms. Schenck prepared guidelines for it, that she told Ms. Carlson beforehand that she was ready and that she told Ms. Carlson afterward that it had gone fine. So, I don't think the meeting poses anything close to a dispute of material fact in this case. I want to touch briefly in my last 20 seconds on student two. Ms. Schenck testified, not that Carlton tried to talk her out of a complaint, she testified that Ms. Carlson asked, are you sure you want to bring a complaint and encourage her to focus on academics? That is not talking somebody out of filing a complaint. And Ms. Schenck went back, met with her friends and decided she, in her written statement, did not want to proceed with a complaint. So, I see them at zero and I appreciate the court's time. Thank you, Mr. Schonemeyer for your argument. Barron, we're back to you. Thank you, your honor. I just wanted to circle back on a couple of questions and I largely agree with Mr. Schonemeyer's recounting of some of the factual record, but I did want to clarify a couple of things. One of which, it is in the record that when Ms. Schenck returned from her winter break in her freshman year, that is when she began seeing the posters of student one. So, that's roughly the time frame is like January of 2012, it would be. And then Ms. Schenck also testified later that when she was allowed to move in April, that the posters that were hanging right by her dorm were still there. So, that's about all that's in the record about how long the posters had been hanging. Thank you. Anything in the record about who really put them up? No, your honor. There is none. Thank you. We had argued that because they said Carlton Track and Field, you understand the argument, your honor. Yeah, proceed. As regards the one-on-one meeting, it is under disputed that it was Carlson's idea that there would be a mediated conversation. What the record shows, though, that the coercion that we have argued about was the coercion that Carlton imposed on Ms. Schenck by telling her, Ms. Schenck comes back from summer after her first year. Carlton has not issued yet the written no all around the campus. So, she goes to Carlton. She says, why am I seeing him everywhere? They issued the no contact order the next day. She has realized that she is really struggling seeing student one around the campus. She is told the only way you can learn about the other sanctions against him is by meeting with him. The meeting did not occur in a vacuum. There was a background as to why Ms. Schenck was at that point willing to meet with him. We would argue there is a jury question about whether that constitutes coercion or not. As regards student two, I think there are fact disputes about what was said to Ms. Schenck as regards pursuing a claim or not against student two. The bottom line is there are enough fact disputes here that we would ask this court to remand for a jury trial. Thank you, your honors. Well, thank you, counsel, both for your argument. And case number 19-3047 is submitted by decision for the court. Ms. Smith, please come forward.